# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| FARMERS INSURANCE COMPANY, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 4:24-cv-00068-DGK ) |
| NICHOLAS WEBBER, | ) ) |
| Defendant. | ) |

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This case arises from an insurance coverage dispute. Following a motor vehicle accident, Plaintiff Farmers Insurance Company, Inc. paid Defendant Nicholas Webber, the required statutory minimum in uninsured motorist ("UM") coverage. Plaintiff declined to pay Defendant the remaining UM coverage limit pursuant to a provision in the insurance policy that reduces UM coverage by amounts an insured receives in workers' compensation benefits.

The parties filed separate suits concerning the UM set-off provision. Plaintiff seeks a declaratory judgment that the provision is enforceable. ECF No. 1. Defendant brings a claim for vexatious refusal to pay the full UM coverage limit. *See Webber v. Farmers Insurance Company, Inc.*, No. 4:24-cv-00091-DGK, ECF No. 1. The cases were consolidated under this case number, and the parties proceeded by stipulating to all material facts and preparing cross-motions for summary judgment.

Now before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 16. For the reason discussed below, Plaintiff's motion for summary judgment is GRANTED and Defendant's motion for summary judgment is DENIED.

**Standard**

A movant is entitled to summary judgment if he "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court makes this determination by viewing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). "In reaching its decision, a court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Leonetti's Frozen Foods, Inc. v. Rew Mktg., Inc.*, 887 F.3d 438, 442 (8th Cir. 2018). To survive summary judgment, the nonmoving party must substantiate his allegations with "sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal quotations and citations omitted).

**Undisputed Material Facts**

Defendant was involved in an automobile accident in Blue Springs, Missouri on September 4, 2021 (the "Accident"). At the time of the Accident, Defendant was employed as a police officer by the City of Blue Springs, Missouri Police Department and was working in the scope and course of his employment as a police officer.

At the time of the Accident, Defendant was driving a Ford Explorer (the "Explorer") owned by the City of Blue Springs, Missouri Police Department. According to the crash report, the Accident occurred when a 2012 Dodge Challenger (the "Challenger") operated by Jacque-Adam

Cunningham-Gray ("Cunningham-Gray") failed to yield and collided with the Explorer. At the time of the accident, the Challenger was leased to Monchell Mitchell.

Webber received workers' compensation benefits pursuant to Mo. Rev. Stat. § 287.120 in connection with the bodily injuries he sustained as a result of the Accident. The total of all payments for medical expenses, temporary total disability, and permanent partial disability equals $288,913.01.

Plaintiff issued to Defendant as named insured Policy Number 19312-92-23 (the "Policy") which was in effect on September 4, 2021. The Policy provides UM coverage subject to the terms, conditions, and limitations stated therein. The Policy's Declaration page lists UM limits of $250,000 each person. The Challenger is an uninsured vehicle as defined by the Policy.

The Policy's Declaration page contains the following provisions:

> THE COVERAGES AND LIMITS STATED ON THIS DECLARATION PAGE ARE FOR REFERENCE PURPOSES ONLY AND SUBJECT TO THE TERMS AND CONDITIONS IN THE POLICY AND POLICY ENDORSEMENTS. THEY MAY NOT BE READ IN ISOLATION.
>
> IT IS IMPORTANT TO READ YOUR ENTIRE POLICY AND POLICY ENDORSEMENTS TO UNDERSTAND THE COVERAGE PROVIDED.
>
> THE LIMITS SHOWN FOR EACH VEHICLE INSURED UNDER THE POLICY AND POLICY ENDORSEMENTS MAY NOT BE COMBINED WITH THE LIMITS FOR THE SAME COVERAGE FOR ANY OTHER VEHICLE LISTED ON THIS DECLARATION PAGE.
>
> THIS MEANS THAT NO STACKING OR AGGREGATION OF THE LIMITS WILL BE ALLOWED UNLESS REQUIRED BY MISSOURI LAW.

The Policy includes the following provisions regarding UM coverage:

> A. **Insuring Agreement- Uninsured Motorist Bodily Injury Coverage**

> 1. If a limit for this coverage is shown on **your Declarations Page**, **we** will pay **damages** an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury** sustained by an **insured person**, caused by an accident, and arising out of the ownership, maintenance, or use of an **uninsured motor vehicle**.
>
> . . .
>
> G. **Limits of Liability**
>
> . . .
>
> 4. No one will be entitled to duplicate payments for the same elements of **damages** under this or any other policy. Additionally, the limits of liability under Part II will be reduced by all sums paid or payable:
>
> . . .
>
> d. As a result of **bodily injury** under any workers' compensation law, disability benefits law or any similar law.

Defendant submitted a claim for UM coverage under the Policy in connection with the Accident. Defendant claims he is entitled to up to $250,000 in UM coverage under the Policy. On or about January 29, 2024, Plaintiff paid Defendant $25,000—the required statutory minimum—leaving $225,000 of UM coverage in dispute.

**Discussion**

The only issue before the Court is the interpretation of the Policy's provision that reduces UM coverage by the amount an insured receives in workers' compensation benefits. Plaintiff argues the set-off provision is enforceable, while Defendant contends it is ambiguous and/or void as against Missouri public policy.

Under Missouri law, the interpretation of an insurance policy is a question of law to be determined by the court. *Jones v. Mid–Century Ins. Co.*, 287 S.W.3d 687, 690 (Mo. 2009) (en banc) (citation omitted). In interpreting an insurance policy, the Court "applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance." *Id.* (citation and internal quotations omitted). If a policy provision is ambiguous, then the

"[a]mbiguous policy language must be construed against the insurer." *Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 47 (Mo. 2009) (en banc) (citations omitted). If, however, the language is unambiguous, then "absent a public policy to the contrary, the policy will be enforced as written." *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 210 (Mo. 1992) (en banc).

Missouri requires UM coverage in a minimum amount of $25,000. *See* Mo. Rev. Stat. § 379.203. The Missouri Supreme Court has long held that provisions in an insurance policy that reduce UM coverage below § 379.203's minimum coverage requirement are void as against public policy. *See Douthet v. State Farm Mut. Auto. Ins. Co.*, 546 S.W.2d 156, 159 (Mo. 1977) (en banc); *Cano v. Travelers Ins. Co.*, 656 S.W.2d 266, 270 (Mo. 1983) (en banc). Missouri courts, however, have not decided whether set-off provisions that reduce UM coverage up to § 379.203's minimum coverage requirement are also void.

To determine whether the Policy's set-off provision is enforceable, the Court engages in a two-step inquiry. First, it considers whether the Policy's language is ambiguous. If so, then the inquiry ends, and the ambiguous language is construed against Plaintiff. But if the language is unambiguous, the Court next considers whether a public policy renders the provision void.

I. **The set-off provision is unambiguous.**

Defendant contends the set-off provision is ambiguous because: (1) the Policy both guarantees and limits UM coverage; and (2) Missouri's workers' compensation benefits "pay[] on account of temporary total disability, not as a result of bodily injury" as defined in the Policy. *See* Def.'s Suggestions in Supp. at 9, ECF No. 16. Defendant's arguments are unpersuasive.

An insurance policy is ambiguous where "there is duplicity, indistinctness, or uncertainty in its meaning, and the policy is therefore open to different constructions." *Rice*, 301 S.W.3d at 47. In general, ambiguity exists "where one provision of a policy appears to grant coverage and another [takes] it away." *Id.* at 48 (citation omitted). For example, the Missouri Supreme Court

5

found a UM set-off provision ambiguous because it "included a partial exclusion limiting UM coverage to the statutory minimum and another provision making any UM coverage exceeding the statutory minimum fully enforceable." *Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 221 n.8 (Mo. 2014) (en banc) (discussing *Rice*, 301 S.W.3d 43).

In contrast, the set-off provision here is unambiguous and clear. The Policy does not include convoluted language that both guarantees and limits coverage. Rather, it provides UM coverage "subject to applicable limitations appearing elsewhere in the policy which is a standard practice in insurance contracts." *Mendelson v. McLaughlin*, 660 S.W.3d 386, 392 (Mo. Ct. App. 2022). Further, the provision is substantially similar to set-off provisions the Missouri Supreme Court has found to be unambiguous. *See Douthet*, 546 S.W.2d at 157 n.2 (finding UM provision unambiguous that stated "[a]ny amount payable under this coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by: . . . (2) the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law . . ."); *Rodriguez v. Gen. Acc. Ins. Co. of Am.*, 808 S.W.2d 379, 381–82 (Mo. 1991) (en banc) (finding underinsured motorist provision unambiguous that stated "the limit of liability shall be reduced by all sums paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible").

Finally, beyond conclusory statements, Defendant provides no legal argument as to how the Policy's use of the term "bodily injury" renders the set-off provision ambiguous with respect to Missouri's workers' compensation laws. Plaintiff's conclusory argument is insufficient at summary judgment. *See Mann*, 497 F.3d at 825.

Accordingly, the Court finds the Policy's set-off provision is unambiguous.

**II.     There is no public policy that renders the Policy's set-off provision void.**

Defendant argues the Policy's set-off provision is void under § 379.203's minimum

coverage requirement and the holdings of *Douthet* and *Cano*. Plaintiff contends neither apply to UM coverage in excess of the statutory minimum.

Defendant's argument is unpersuasive. The public policy behind § 379.203's minimum coverage requirement "is to establish a level of protection equivalent to the liability coverage the insured would have received had the insured been involved in an accident with an insured tortfeasor." *Kuda v. Am. Fam. Mut. Ins. Co.*, 790 S.W.2d 464, 467 (Mo. 1990) (en banc). And "[w]hile § 379.203 dictates the minimum requirements for uninsured motorist coverage in motor vehicle liability policies, the parties to an insurance contract are always free to implement policies which exceed the statutory requirements." *Ezell v. Columbia Ins. Co.*, 942 S.W.2d 913, 9919 (Mo. Ct. App. 1996). Thus, § 379.203's public policy does not expressly extend to optional coverage above the required minimum amount.

Similarly, the holdings in *Douthet* and *Cano* do not prohibit reducing UM coverage in excess of the statutory minimum. Both of those cases involved insurers seeking to reduce UM coverage below the statutory minimum. *See Douthet*, 546 S.W.2d at 157; *Cano*, 656 S.W.2d at 268. As such, these cases cannot be read as broadly as Defendant contends. *See Williams v. Cas. Reciprocal Exch.*, 929 S.W.2d 802, 809 (Mo. Ct. App. 1996) (noting "*Cano* and *Douthet* do not explicitly require that the policy be held unenforceable above the $25,000 statutory minimum"); *Rice v. Shelter Mut. Ins. Co.*, No. WD69411, 2009 WL 585903 (Mo. Ct. App. Mar. 10, 2009) (unpublished) (same), *transferred and decided on other grounds by Rice*, 301 S.W.3d 43.

Moreover, Missouri courts enforce set-off provisions in insurance policies in other circumstances. For example, "Missouri courts have repeatedly found household exclusion clauses are valid as to any coverage exceeding the amounts mandated by" statute, *see Progressive Nw. Ins. Co. v. Talbert*, 407 S.W.3d 1, 6 (Mo. Ct. App. 2013), and have enforced set-off provisions in cases

7

involving underinsured motorist coverage, *see Addison v. State Farm Mut. Auto. Ins. Co.*, 932 S.W.2d 788 (Mo. Ct. App. 1996). "These cases strongly suggest that, absent a statutory mandate, no public policy interferes with an insurer's right to include a workers' compensation offset, subject to ordinary contract defenses." *Rice*, 2009 WL 585903, at *8.

Finally, Defendant makes two additional arguments that need addressing. First, Defendant contends Mo. Rev. Stat. § 287.150 prohibits the subrogation of his UM coverage. *See* Def.'s Suggestions in Supp. at 6–8. But § 287.150 does not apply to the present dispute because it does not involve subrogation.

Second, Defendant argues the Policy's set-off provision is void because it does not inform an insured that any reduction in UM coverage is subject to § 379.203's minimum coverage requirements. *See* Def.'s Reply Suggestions at 2, ECF No 19 ("The provision is void because it fails to specify that its uninsured limits will be reduced . . . above the statutory minimum."). That is, Defendant contends the provision is void because it purports to reduce all UM coverage including coverage below the statutory minimum. Defendant's argument fails for two reasons. First, this is a new argument raised for the first time in Defendant's reply brief, so the Court will not consider it. *See Mahaney v. Warren County*, 206 F.3d 770, 771 n.2 (8th Cir. 2000) ("Claims not raised in an initial brief are waived, and we generally do not consider issues raised for the first time . . . in a reply brief." (internal citation omitted)). Second, to the extent the provision purports to reduce all UM coverage, the provision is void up to the statutory minimum. *See Williams*, 929 S.W.2d at 809. But because § 379.203 does not expressly extend to optional UM coverage in excess of the minimum amounts, partial enforcement of the provision is permissible. *See id.* at 809–10.

Accordingly, because there is no statutory mandate or public policy prohibiting the

8

reduction of UM coverage in excess of the statutory minimum, Plaintiff is entitled to summary judgment in its favor on all claims.

## Conclusion

For the forgoing reasons, Plaintiff's motion for summary judgment is GRANTED and Defendant's motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Date:   September 13, 2024               /s/ Greg Kays
                                         GREG KAYS, JUDGE
                                         UNITED STATES DISTRICT COURT